COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Humphreys and Senior Judge Overton

VENESA WALKER-DUNCAN

v.      Record No. 1752-03-1

GARY ALLEN DUNCAN

MEMORANDUM OPINION[*]
PER CURIAM
JANUARY 20, 2004

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

(Jack E. Ferrebee; Hofheimer/Ferrebee, P.C., on brief), for appellant.

No brief for the appellee or the Guardian *ad litem* for the minor children.

Venesa Walker-Duncan (appellant) contends the "trial court's imposition of its contempt powers, including the threat of incarceration," in order to satisfy appellant's debt to the guardian *ad litem* "contravene[d] the United States Constitution, Amendment XIII" and "was an abuse of discretion in light of its initial ruling that it would enter judgment against Walker-Duncan." Upon reviewing the record and opening brief, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Background

By order dated February 16, 2001, the trial judge appointed Shawn Salyer to act as guardian *ad litem* for appellant's three minor children during a lengthy and contentious custody dispute between appellant and her husband.  The guardian *ad litem* filed a report on May 24, 2002 and an itemized bill on August 27, 2002, detailing her services.  Appellant had paid $550 toward the guardian *ad litem* fee.  In August 2002, the trial judge ordered "that the cost of the Guardian Ad

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Litem shall be equally paid by the parties, 50/50, within 90 days hereof." On November 12, 2002, the guardian *ad litem* filed a motion seeking payment of her fee.

At the December 20, 2002 hearing on the motion, the guardian *ad litem* told the trial judge that she submitted the bill to appellant "some time ago." Appellant's attorney complained about the guardian *ad litem's* performance and recommendations and argued as follows:

> Your Honor, our position is that the guardian ad litem should not be paid by [appellant]. If anybody should pay a fee, it should be [appellant's husband].
>
> It would be totally inequitable, unfair, unjust to force her to pay for something that she – that – that there's no demonstrable benefit for these kids to have had to begin with through this – the guardian ad litem, with all due respect to Ms. Salyer.
>
> But if – if the Court believes that she's entitled to be paid for her time, it certainly shouldn't be [appellant] who's financially ruined as a result of the – the positions that Ms. Salyer took in the face of evidence that – that her position was – was erroneous.

Appellant's husband's attorney argued that "[t]his was a long . . . and hard-fought case, and [the guardian *ad litem*] hung in there." He indicated that "[t]he bill is reasonable" and said appellant's husband intended to pay half the fee.

The trial judge found that the guardian *ad litem* remained involved throughout the litigation and "did her job." Commenting upon the large amount of "time involved in dealing with this case," the judge indicated he was "surprised the bill is . . . as small as it is." Finding that the guardian *ad litem* "did a good job" and was entitled to her fee, the judge ruled that "each party pay one-half of the guardian ad litem fee" and that he would "grant judgment" if the fee was not paid within thirty days. The order, entered on February 14, 2003, required appellant "to pay said amount within 30 days from the date of the hearing, or, on or before January 20, 2003."

The guardian *ad litem* filed a petition for appellant to show cause why she should not be held in contempt of court for violating the order to pay her portion of the fee within thirty days. At

the hearing on the petition, appellant's attorney argued that the trial judge should enter a judgment against appellant rather than use his contempt power. Appellant's attorney argued that appellant "doesn't have resources to pay," and appellant testified that she provides care to her mother, who pays her "about a thousand dollars a month." Appellant's attorney further contended that an order of civil contempt would violate the Thirteenth Amendment's proscription against "involuntary servitude, peonage."

At the hearing and in an opinion letter dated March 20, 2003, the trial judge reviewed the lengthy history surrounding this case and the extensive services rendered by the guardian *ad litem*. The judge found that appointing a guardian *ad litem* "was essential in this case" as the parties continuously furthered "their self-interest and disregard[ed] the best interest of their children." The trial judge also found that appellant "has the ability to pay as many as four attorneys, . . . has the ability to pay the Guardian ad Litem fee," and "has, without legal justification or excuse, failed to obey the decree." The trial judge ruled that appellant was in civil contempt and "may purge such contempt by paying the total sum due" or by making monthly payments.

### Thirteenth Amendment Claim

The Thirteenth Amendment to the Constitution of the United States provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

In support of her theory that the judge's order violates the Thirteenth Amendment appellant cites Wright v. Matthews, 209 Va. 246, 163 S.E.2d 158 (1968), and argues that a judge may not incarcerate a citizen for failing to pay the costs of court. In that case, Wright sought a writ of *habeas corpus* after he had served his sentences, alleging the state refused to release him from incarceration solely because he failed to pay the costs of his criminal prosecution. Id. at

246-47, 163 S.E.2d at 158-59.  The Supreme Court of Virginia held that "[c]osts assessed against a person who has been convicted of a crime are not part of his punishment for the crime."  Id. at 248, 163 S.E.2d at 160.  Therefore, the Supreme Court ruled that Wright's continued confinement after serving his sentences "constitute[d] involuntary servitude," which was "proscribed by the Thirteenth Amendment."  Id.

Unlike Wright, appellant was not a criminal defendant.  Appellant was a civil litigant in a contentious and complex custody and visitation dispute.  "In those contested custody cases where the trial judge finds that the best interests of the child are not adequately protected by the parties, appointment of a guardian *ad litem* for the child is appropriate."  Verrocchio v. Verrocchio, 16 Va. App. 314, 322, 429 S.E.2d 482, 487 (1993).

> Whether to award attorney's fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion."  The decision to apportion guardian fees between both parties or to one party alone also involves a matter within the chancellor's discretion.  Because each case presents its own unique set of equities, principles of appellate review steer clear of inflexible rules and focus instead on "reasonableness under all the circumstances."

Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (citations omitted); see also Verrocchio, 16 Va. App. at 322, 429 S.E.2d at 487 ("Indivisible from the power of appointment is the associated power equitably to apportion the fees and expenses of the guardian *ad litem* as costs to the parties.").

In civil litigation, "the trial court '"has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order."'"  Commonwealth ex. rel. Graham v. Bazemore, 32 Va. App. 451, 455, 528 S.E.2d 193, 195 (2000) (citations omitted). "In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court."  Alexander v. Alexander, 12 Va. App. 691, 696, 406

S.E.2d 666, 669 (1991). "The offending party then has the burden of proving justification for his or her failure to comply." Id.

Upon a finding of contempt, a trial judge has discretionary power to enforce decrees of the court.

> Courts are clothed with power and charged with the duty of maintaining the dignity of the law. Decrees are mandates of the courts and courts must have power to enforce them if organized society is to be maintained. The degree of punishment for contempt is within the sound discretion of the trial court.

Local 333B, United Marine Div. v. Commonwealth, 193 Va. 773, 786, 71 S.E.2d 159, 167 (1952). "A trial court's determination of matters within its own discretion is reversible on appeal only for abuse of that discretion . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Goldhammer v. Cohen, 31 Va. App. 728, 734-35, 525 S.E.2d 599, 602 (2000).

The trial judge properly employed his equitable powers to appoint a guardian *ad litem*, which he found essential to protect the best interests of the children. See Verrocchio, 16 Va. App. at 322, 429 S.E.2d at 487. The trial judge found that this was a lengthy dispute in which appellant retained several attorneys and law firms and filed a multitude of documents, motions and objections. Acknowledging his familiarity with the issues and the parties, the trial judge balanced appellant's argument that she could not afford to pay her share of the fee with appellant's fervent criticism of the guardian *ad litem's* recommendations, her expressed intention not to pay the fee, and appellant's attorney's avowal that appellant expended over $100,000 to rectify alleged errors caused by the report and recommendations.

The record supports the trial judge's findings that the services of a guardian *ad litem* were required in this case and that appellant acted in contempt of the order requiring her to pay her share

of the guardian's fee. Accordingly, the trial judge did not abuse his discretion or violate the Thirteenth Amendment in finding appellant in contempt.

Abuse of Discretion

In a one-sentence argument, appellant contends "the trial court abused its discretion in abandoning its original decision to enter a judgment against [her] and thereafter invoking its contempt powers to punish [her] for reasons extraneous to the payment of the guardian *ad litem's* fees." The record does indicate that at the December 20, 2002 hearing, the trial judge contemplated granting a judgment to appellee if appellant failed to pay the fee. Addressing the reference to issuing a judgment, the trial judge later indicated that he did not "intend[] to say that." Significantly, the order the trial judge entered did not provide for a judgment to be issued.

> "It is the firmly established law of this Commonwealth that a trial court speaks only through its written orders." We further acknowledge, as has the Court of Appeals of Virginia, the general principle that trial courts have the authority to interpret their own orders. "Furthermore, when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court."

Fredericksburg Constr. Co. v. J.W. Wyne Excavating, 260 Va. 137, 143-44, 530 S.E.2d 148, 152 (2000) (citations omitted).

Absent an order reflecting that a judgment would be entered if appellant failed to pay, we cannot say the trial judge abused his discretion in finding that appellant had no right to have a judgment entered in lieu of contempt.

For these reasons, we summarily affirm the trial judge's contempt order.

Affirmed.